FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 SEP 22  A 9: 47

CLERK'S OFFICE
AT GREENBELT

BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

*Southern Division*

|  |  |  |
|---|---|---|
| **WAYNE E. COLEMAN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No.: GJH-15-920** |
| **v.** | * | |
| | * | |
| **CALVERT COUNTY, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION

*Pro-Se* Plaintiff Wayne E. Coleman's Amended Complaint alleges violations of his civil

rights, pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 18 U.S.C. § 241, along with state law

claims for various torts against Calvert County, the Calvert County Sheriff Department, the State

of Maryland, Supervising Officer Phelps, Officer Gott, Officer Cress, and Sheriff Mike Evans.

ECF No. 16. Now pending before the Court is Defendants' Motion to Dismiss or, in the

Alternative, Motion for Summary Judgment. ECF No. 27. A hearing is unnecessary. Loc. R.

105.6 (D. Md. 2016). For the reasons stated below, the Court grants summary judgment to all

Defendants on all counts except for the unreasonable search and seizure claim in Count I with

respect to Gott, Phelps, and Evans in their individual capacities.

## I.  BACKGROUND[1]

On the morning of February 4, 2014, Coleman was driving his pick-up truck home along Route 260 after picking up his medication at a local pharmacy when Officer Gott pulled him over for not having a rear license plate. ECF No. 16 ¶ 6. Gott approached the driver's side door, informed Coleman that he lacked a rear license plate, and asked for identification. *Id.* Coleman handed Gott a "personal identification card"[2] and a "Public Servant's Questionnaire." *Id.* The Questionnaire asserted the right of a "sovereign natural person" to collect information from a "Public Servant" pursuant to 5 U.S.C. § 552a(e)(3). ECF No. 17-2. Upon receiving these papers, Gott returned to his vehicle and requested a supervisor because Coleman was not providing his license. ECF No. 27, Ex. A at 09:47:30.[3]

Supervising Officer Phelps then arrived on the scene. ECF No. 16 ¶ 7. Both Phelps and Gott approached the driver's side window of the truck, and Phelps asked Coleman to produce a driver's license—telling him he could go to jail for failing to produce a license during a traffic stop. ECF No. 27, Ex. A at 09:51:00. After Coleman's noncompliance, Phelps opened the truck door, took Coleman's hand, and said, "climb on out, I don't want to drag you out of the vehicle." *Id.* at 09:51:17; *contra* ECF No. 16 ¶ 8 (alleging that Phelps said "[y]ou're under arrest" while removing Coleman from the vehicle). At the same time, the two officers grabbed each of

---

[1] The parties in this case allege different versions of certain facts, but for the purposes of this motion, the facts must be viewed in the light most favorable to Coleman, the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). However, in addition to submitting declarations suggesting different versions of certain facts, Defendants submitted video footage from a dashboard camera inside of Officer Gott's patrol car. *See* ECF No. 27, Ex. A. The video spans twenty-seven minutes and captures the entirety of the traffic stop. *Id.* When the non-movant's version of the facts are "so utterly discredited by the record that no reasonable jury could have believed him," the facts should be viewed in the light depicted by the recording. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Consequently, certain competing versions of the facts will be construed in light of the video, and the discrepancies with Plaintiff's version of the facts will be noted.

[2] The nature of the "personal identification card" is unclear. It was not, however, Coleman's driver's license, which Officer Phelps later asked for. ECF No. 16 ¶ 7.

[3] The pin cites for the video refer to time stamps embedded on the bottom-right corner of the video.

Coleman's arms and moved him to the side of the truck. ECF No. 27, Ex. A at 09:51:17; *contra* ECF No. 16 ¶ 8 (alleging that Phelps "aggressively grabbed Plaintiff by the hand (pressure point), neck and shoulder area" and twisted his right arm while Gott twisted his left arm). The officers forcefully placed Coleman's hands on the truck and frisked him after he reached for his back pocket. ECF No. 27, Ex. A at 09:51:26. The officers searched inside at least some of Coleman's pockets during the frisk and seized a wallet. ECF No. 16 ¶ 9. Inside the wallet, the officers found Coleman's Virginia driver's license. *Id.* Phelps escorted Coleman by his shirtsleeve behind the truck and ordered him to sit on the roadside guardrail. ECF No. 27, Ex. A at 09:52:40; *contra* ECF No. 16 ¶ 8 (alleging that Phelps "forcibly carried" Coleman to the guardrail). At this point, Officer Cress arrived on the scene. ECF No. 16 ¶ 9.

The officers stood around Coleman on the guardrail. *Id.* ¶ 10.[4] Phelps and Gott took turns searching the truck's interior. *Id.* ¶ 9.[5] Phelps took the keys out of the truck and removed the ignition key from the key ring because the ring held a little knife. *Id.* ¶ 11. The officers informed Coleman that his truck would be impounded because it could not be legally operated without a rear plate. *Id.* Phelps asked Coleman if he wanted anything from the truck before it was towed, and Coleman mentioned only an unsealed, stamped letter which Phelps brought to him. *Id.* ¶ 12. The officers handed Coleman a ticket, told him to use his cell phone to call a friend who could pick him up, placed the key ring containing the little knife thirty feet up the road from the truck, and terminated the encounter. *Id.* ¶¶ 10, 13.

---

[4] The dashboard video plainly contradicts Plaintiff's allegation that the officers' hands were on their gun holsters while standing near him. *See* ECF No. 27, Ex. A.

[5] The video clarifies the chronology of the events following Coleman's placement on the guardrail. The officers did open the truck's passenger side door but only after determining that the truck would be impounded and telling Coleman to use his cell phone to have someone pick him up. *See* ECF No. 27, Ex. A at 09:55:33–09:57:11. Prior to the officers' impoundment decision, they had looked inside the truck only through the open driver's side door and through the windshield. *Id.* at 09:53:00.

In the days following the encounter, Coleman talked to Sheriff Mike Evans over the phone. *Id.* ¶ 14. Coleman asked if the Sheriff's Department could return the medication left inside his truck. *Id.* He also expressed his concern that the vehicle was illegally impounded, but Evans did not remedy those concerns. *Id.* Coleman was charged criminally for driving an uninsured vehicle, failing to attach registration plates, and operating an unregistered vehicle on the highway. *Id.* ¶ 15. The criminal proceedings were subsequently terminated in favor of Coleman. *Id.*

Coleman raises the following claims against one or more Defendants pursuant to 42 U.S.C. § 1983: unreasonable search and seizure; deprivation of liberty without due process; deprivation of property without due process; excessive force; false arrest; a takings claim; and, failure to implement appropriate police customs and practices. ECF No. 16 ¶¶ 23–44. Coleman also raises additional federal claims against the three officers present during the stop and Sheriff Evans for conspiring against Coleman pursuant to 42 U.S.C. § 1985(3), *id.* ¶¶ 45–47, against the Sheriff Department for neglecting to prevent a conspiracy pursuant to 42 U.S.C. § 1986, *id.* ¶¶ 48–53, and against the three officers and Evans for conspiring to deprive constitutional rights pursuant to 18 U.S.C. § 241, *id.* ¶¶ 54–55. Coleman raises the following claims against one or more Defendants pursuant to Maryland law: assault; battery; intentional infliction of emotional distress; false arrest; malicious prosecution; abuse of process; false imprisonment; and, gross negligence. *Id.* ¶¶ 56–96. Lastly, Coleman alleges a violation of Article 24 of Maryland's Declaration of Rights. *Id.* ¶¶ 71–75.

Coleman seeks the following relief: a declaration that his rights were violated; an injunction ordering Defendants to avoid Coleman on sight and forbidding them from detaining

4

him; compensatory and punitive damages; statutory damages and reimbursement of funds paid or lost; and court costs. *Id.* ¶¶ 97–102.

Coleman filed his Amended Complaint on June 12, 2015. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. The Court sent Plaintiff a letter dated June 1, 2016 that notified him of Defendants' motion and provided him seventeen days to file a response. ECF No. 28. Coleman replied with a letter dated June 21, 2016, ECF No. 29, requesting clarification of his need to respond to a pending motion. The Court construed Mr. Coleman's letter as a Motion for Extension of Time to Respond and granted Coleman thirty days from June 24, 2016 to file a response. ECF No. 30. Coleman filed his response on July 29, 2016. ECF No. 31.

## II. MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Defendants have styled their motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for summary judgment under Rule 56. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *McCray v. Md. DOT.*, No. ELH-11-3732, 2013 U.S. Dist. LEXIS 8513, at *15 (D. Md. Jan. 16, 2013); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion. *Id.* at *16. Typically, all parties must then be given the opportunity to present all material pertinent to the motion, Fed. R. Civ. P. 12(d), but when the moving party captions its motion "in the alternative" and presents evidence

5

outside the pleadings for the Court's consideration, the parties are deemed to have notice that the Court may treat the motion as one for summary judgment under the parameters of Rule 12(d). *McCray*, 2013 U.S. Dist. LEXIS 8513, at *17.

In the instant case, Defendants' motion relies heavily on video footage from a dashboard camera in Gott's car. Coleman likewise references the video in his Amended Complaint and had full opportunity to respond to this evidence. Thus, it appears that both parties agree the video is helpful to the Court's resolution of this motion and neither side has requested additional discovery in this regard. *See McCray*, 2013 U.S. Dist. LEXIS 8513, at *16 ("In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary.") (citation omitted). Accordingly, conversion of the motion to a motion for summary judgment under Rule 56 is appropriate.

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322–24.

The Court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). If the non-movant's version of

the facts are "so utterly discredited by the record," in this case the dashboard recording, "that no reasonable jury could have believed him," the facts should be viewed in the light depicted by the recording. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (finding that the courts below should not have relied on a "visible fiction" refuted by a videotape).

Finally, "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

**B.      42 U.S.C. § 1983 Claims (Counts I–V)**[6]

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See* 42 U.S.C. § 1983 (2012); *Brown v. Bailey*, No. RDB-11-01901, 2012 U.S. Dist. LEXIS 81664, at *14 (D. Md. June 13, 2012) ("A civil rights action under Section 1983 allows 'a party who has been deprived of a federal right under the color of state law to seek relief.'") ( quoting *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999)). "To state a claim under Section 1983, a plaintiff must allege that: 1) a right secured by the Constitution or laws of the United States was violated and 2) the alleged violation was committed by a person acting under the color of state law." *Brown*, 2012 U.S. Dist. LEXIS 81664, at *15–16 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**1.   Unreasonable Search and Seizure (Count I)**

Defendants seek summary judgment on Count I which alleges, *inter alia*, unreasonable searches and seizures under the Fourth and Fourteenth Amendments during the traffic stop. ECF No. 16 ¶ 26.

---

[6] There is significant overlap within the five § 1983 counts. When appropriate, the Court will make note when a summary judgment decision applies to multiple counts. Additionally, Plaintiff alleges multiple § 1983 causes of action within Count I: unreasonable search and seizure; deprivation of liberty without due process; deprivation of property without due process; excessive force; false arrest; and a takings claim. ECF No. 16 ¶ 23.

### a.  The Initial Traffic Stop

Plaintiff alleges that Officer Gott lacked a legally sufficient basis to conduct a warrantless stop of Plaintiff's vehicle. *Id.* A warrantless traffic stop requires, at minimum, a "reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

In Maryland, it is illegal to operate a vehicle "on any highway in [Maryland], unless there is attached to the vehicle and displayed on it . . . plates issued for the vehicle . . . for the current regulatory period . . . ." Md. Code Ann., Transp. § 13-411(d)(1) (West 2016). "[O]ne plate shall be attached to the front and the other on the rear of the vehicle." § 13-411(a). In his Amended Complaint, Plaintiff concedes that he was driving along Route 260, a Maryland highway, immediately prior to the traffic stop. ECF No. 16 ¶ 6. Plaintiff also concedes that he was driving his truck without plates. *Id.* Additionally, the dashboard video shows that the truck was missing a rear license plate, and that the missing plate was visible from Gott's vantage point immediately prior to the decision to stop. ECF No. 27, Ex. A. Thus, Gott had reasonable suspicion to stop Coleman's vehicle for a violation of Maryland law because he observed first-hand the lack of a rear license plate. *See U.S. v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013) (finding that officers had reasonable suspicion for a traffic stop after observing a vehicle with illegal license plates under Maryland law). The Court grants summary judgment in favor of Defendants regarding the alleged illegality of the initial stop in Count I.

### b.  The Removal of Coleman from His Vehicle

Plaintiff alleges the officers violated his Fourth Amendment right to be free from unreasonable seizure by opening the driver's door and removing him from the truck. *Id.* ¶ 26. The Fourth Amendment "reasonableness" analysis requires balancing "the public interest and the individual's right to personal security free from arbitrary interference by law officers."

8

*Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)); *United States v. Sakyi*, 160 F.3d 164, 167 (4th Cir. 1998). Applying this balancing test to *Terry* traffic stops, the Supreme Court has found that, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Mimms*, 434 U.S. at 111 n.6. The public interest in an officer's safety outweighs the "mere inconvenience" to the driver from being forced to exit the vehicle. *See id.* at 111. "A brief but complete restriction of liberty is valid under *Terry*." *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987) (citing *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982)). Accordingly, the officers had the authority to exert some physical force to effectuate the order for Coleman to step out of his vehicle.[7]

Coleman's truck was lawfully stopped for a traffic violation. Pursuant to *Mimms*, the officers did not violate the Fourth Amendment's proscription of unreasonable searches and seizures by ordering Coleman from the truck then physically removing him upon noncompliance. The reasonableness of the officers' actions stands as a lawful continuation of the initial *Terry* stop. Thus, the Court grants summary judgment in favor of Defendants regarding the Count I allegation of unreasonable seizure when Coleman was removed from the vehicle.

### c. The Frisk of Coleman and Wallet Search

Plaintiff alleges the officers violated his Fourth Amendment right to be free from an illegal search by performing a patdown search of his person shortly after he exited the truck. *See* ECF No. 16 ¶ 26. "To justify a patdown of the driver or a passenger during a traffic stop . . . the

---

[7] The degree of physical force the officers used against Coleman to effectuate the order to exit the vehicle will be analyzed further in the discussion of the excessive force claim.

police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

Coleman alleges that Gott and Phelps carried him to the side of the truck then began "tearing through every pocket of shirt, coat and pants after forcibly placing his hands upon his truck." ECF No. 16 ¶ 9. The dashboard video, however, provides crucial context absent from Plaintiff's Amended Complaint for the officers' decision to commence the body patdown. Immediately prior to the frisk and while standing by the side of the truck, Coleman reached with his right hand into his right back pocket. ECF No. 18, Ex. A. at 09:51:26.

Observing Coleman reaching toward his back pocket, like observing a bulge in a jacket, provided Gott and Phelps a reasonable suspicion that Coleman was armed and dangerous and reaching for a weapon, which was sufficient to justify a patdown. *See Mimms* 434 U.S. at 112 (finding frisk of driver previously ordered out of his vehicle to be lawful because the police's observation of an unidentified bulge in the driver's jacket provided a reasonable suspicion that he was armed and dangerous).

But there remains an issue of whether the officers exceeded the permissible scope of the frisk. The patdown must be limited to outer clothing. *United States v. Raymond*, 152 F.3d 309, 312 (4th Cir. 1998). If an officer feels an object during the patdown, he may lawfully seize it only if "the contour or mass of the object makes its identity [as a weapon or contraband] immediately apparent." *See id.* at 312 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). "Once an officer has determined that the object is not a weapon, however, and if its shape or size does not indicate its contraband nature, the search must stop." *Raymond*, 152 F.3d at 312 (citing *Dickerson*, 152 F.3d at 378).

10

Coleman alleges that Gott and Phelps were "tearing through every pocket of shirt, coat and pants" rather than limiting their frisk to a patdown of outer clothing. ECF No. 16 ¶ 9. At some point during the frisk, the officers reached into Coleman's pocket, seized his wallet, and searched inside it. *Id.* The dashboard video corroborates Coleman's base allegation that the frisk exceeded an outer clothing patdown. The video leaves unclear the point during the frisk when the officers seized Coleman's wallet. ECF No. 18, Ex. A at 09:51:27–52:29. At 09:51:33, Gott clearly reaches into Coleman's jacket pocket. *Id.* at 09:52:21. Gott also removes Coleman's baseball cap from his head. *Id.*

Defendants' motion is silent regarding whether the officers reasonably thought any item felt on Coleman's person during the patdown was "immediately apparent" as a weapon or contraband. Defendants do not provide a sufficient reason why the patdown justified the seizure and search of Coleman's wallet, the search inside other pockets, or the search under the baseball cap.[8] Consequently, the Court denies summary judgment to Gott, Phelps, and Evans in their individual capacities regarding the Count I allegation of an unreasonable search due to the scope of the frisk.[9]

Defendants' defense of qualified immunity fails. To overcome the defense of qualified immunity, Plaintiff must show that the official violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Conn v. Gabbert*, 526 U.S. 286, 290 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Phelps and Gott

_____

[8] Defendants cite to *United States v. Bethel*, 52 Fed. Appx. 609 (4th Cir. 2002) for the proposition that the officers had probable cause to arrest (and search) the plaintiff based on his failure to provide satisfactory identification. ECF No. 27-1 at 22. But, here, Plaintiff alleges that he handed Defendants a "personal identification card." ECF No. 16 ¶ 6. Without knowing the contents of the card, the Court cannot, at this juncture, say as a matter of law that lack of identification justified a search that went beyond the limitations of a *Terry* frisk for weapons. Additionally, there is no indication that he was placed under arrest and searched incident to that arrest.

[9] Summary judgment is granted to Officer Cress, who did not participate in the frisk. Summary judgment is also granted to the remaining defendants who are not "persons" as required by § 1983.

allegedly violated a clearly established Fourth Amendment right to be free from searches that go beyond outer clothing patdowns during a *Terry* frisk absent additional justification by seizing Coleman's wallet and searching it.

### d. The Inventory Search of Coleman's Truck

Plaintiff alleges the officers violated his Fourth Amendment right to be free from an unreasonable search by searching his vehicle without a warrant. *See* ECF No. 16 ¶¶ 9, 26. Defendants argue that the officers conducted a lawful inventory search of Coleman's truck, and that such inventory searches are exempt from the Fourth Amendment's warrant requirement. ECF No. 27 at 27. "For an inventory search to be valid, the vehicle searched should first be in the valid custody of law enforcement officers conducting the inventory." *United States v. Brown*, 787 F.2d 929, 931–32 (4th Cir. 1986). "[T]he police may inventory the vehicle, if such inventories are routine and conducted pursuant to standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner." *Id.* at 932.

Here, the officers took valid custody of Coleman's truck. Coleman was operating his truck without registration plates, which is illegal under Maryland law. Md. Code Ann., Transp. § 13-411(d)(1). Additionally, Coleman told the officers that his vehicle was not registered, ECF No. 27, Ex. A at 09:52:13, which meant that it could not be legally driven on Maryland highways. Md. Code Ann., Transp. § 13-401(b)(1). For these reasons, the vehicle was properly impounded.

Based on the video, the officers did not take any actions that could be construed as a search of the vehicle until after the decision to impound the vehicle had been made, ECF No. 27, Ex. A., and the inventory search was performed pursuant to standard police procedures as documented in the Vehicle Report filled out by Phelps. ECF No. 27-3. The Court therefore

12

grants summary judgment to Defendants regarding the allegations in Count I of an illegal inventory search.

### 2. Deprivation of Liberty Without Due Process of Law (Count I)

Defendants seek summary judgment on the allegation in Count I that Coleman was deprived of liberty without due process of law, ECF No. 16 ¶ 24, and argue, correctly, that Plaintiff's Amended Complaint does not allege any facts which would create a cognizable claim against Defendants for deprivation of liberty without due process. *See id.*

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). "In assessing whether a detention is too long in duration to be justified as an investigative stop," courts consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985); *see also Peters v. City of Mt. Ranier*, GJH-14-00955, 2016 U.S. Dist. LEXIS 39290, at *15 (D. Md. March 24, 2016) ("A Terry stop must last no longer than necessary to verify or dispel the officer's suspicion.") (internal citations omitted).

The video recording captures the entire twenty-seven minute traffic stop. ECF No. 18, Ex. A. Over the course of the stop, the officers appear to be diligently investigating the traffic violation—determining Coleman's identity, impounding his vehicle, and issuing the proper traffic citations. *Id.* Plaintiff has not presented any facts which would dispute the lawful duration of the traffic stop. Consequently, the Court grants summary judgment to Defendants regarding alleged deprivation of liberty without due process of law contained in Count I.

### 3. Deprivation of Property Without Due Process of Law (Counts I, V)

Defendants seek summary judgment on allegations in Counts I and V that the officers deprived Plaintiff of his property without due process in violation of the Fifth and Fourteenth

Amendments when they impounded Plaintiff's truck. ECF No. 16 ¶¶ 24, 42. In order to succeed on the claim, Plaintiff must show that he had a property interest, that the state deprived him of that interest, and that the procedures employed were constitutionally inadequate. *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009).

This Court has found that the procedures employed during impoundment are constitutionally adequate if the dispossessed party "had notice and a fair opportunity to be heard throughout [the] process." *Richter v. Maryland*, 590 F. Supp. 2d 730, 737 (D. Md. 2008). In *Richter*, the plaintiff had ample notice and opportunity to be heard when, after locating his towed vehicle, he was advised of the process by which he could retrieve it. *See id.* at 737.

Plaintiff concedes that Officer Phelps informed him that the vehicle was being impounded because it could not legally be driven without registration tags. ECF No. 16 ¶ 11. He additionally concedes that Officer Gott gave him a ticket. *Id.* ¶ 10. Additionally, Phelps received a Vehicle Report before the traffic stop concluded, which provided the location where the vehicle would be taken and that the vehicle "Needs to be Registered" before it could be released. ECF No. 27-3. Thus, Plaintiff had the same "ample notice and opportunity" afforded to the dispossessed party in *Richter*. Consequently, the Court grants summary judgment to Defendants regarding the alleged deprivation of property without due process alleged in Counts I and V.[10]

### 4.  Excessive Force (Counts I, III)

Defendants seek summary judgment on allegations in Counts I and III that the officers used excessive force in violation of the Fourth and Fourteenth Amendments during the traffic stop of Coleman. ECF No. 16 ¶¶ 24, 35. "The Fourth Amendment bars police officers from using excessive force to effectuate a seizure." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016). Courts

---

[10] For the same reasons, Plaintiffs' Count I allegations that Plaintiffs' vehicle was taken without compensation is also dismissed.

evaluate excessive force claims under an objective reasonableness standard—balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 884–85 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This balancing test requires evaluating "the proportionality of the force in light of all the circumstances." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015).

Plaintiff refers to the dashboard video to support his allegation that Officers Gott and Phelps used excessive force when removing him from the truck. ECF No. 16 ¶ 8. Plaintiff alleges that Phelps, after opening the driver's side door, "aggressively grabbed Plaintiff by the hand (pressure point), neck and shoulder area" and twisted his right arm while Gott twisted his left arm. *Id.* Plaintiff alleges that the officers went on to forcibly place his hands upon the truck. *Id.* ¶ 9. After the frisk, Coleman alleges that Phelps carried him by force to the railing along the road. *Id.* After forcing Coleman to sit on the guardrail, the three officers allegedly stood around him with their hands on the holsters of their guns. *Id.* ¶ 10.

But the dashboard video plainly contradicts Plaintiff's portrayal of the officers' use of force during the traffic stop. Immediately prior to removing Coleman from the truck, Phelps asked for his license, told him he could go to jail for not producing it, and expressed his preference to not have to drag him out of the vehicle. ECF No. 18, Ex. A at 09:51:00. After Coleman's continued failure to produce a license, Phelps and Gott each grabbed one of his arms and carried him to the side of the truck. *Id.* at 09:51:17. The recording does not support the allegations of arm-twisting or extra physical contact by Phelps to Coleman's neck and shoulder areas. *Id.* Given Coleman's failures to produce his license, the officers' lawful order for Coleman to step out of the vehicle, and Coleman's continued noncompliance with that order, the officers' actions were reasonable and proportionate to the circumstances.

15

The officers forcefully placed Coleman's hands on the truck only after he had reached for his back pocket. The video depicts Phelps barely holding onto Coleman's sleeve to escort him to the guardrail rather than carrying him by force. ECF No. 18, Ex. A at 09:52:40. Finally, the video fails to depict Gott, Phelps, or Cress at any time with their hands on the holsters of their weapons in a way that would reasonably signal a threat of violence against Coleman. *See* ECF No. 18, Ex. A. At no point in the video did any of the officers have a hand on the handle of a gun. *Id.* If any of the officers touched their holsters while surrounding Coleman, such contact could only be construed as incidental. *Id.* Thus, at no point can the force used by the officers be deemed excessive.

Consequently, the Court grants summary judgment to Defendants regarding the alleged uses of excessive force enumerated in Counts I and III.

### 5. False Arrest (Counts I, IV)

Defendants seek summary judgment on allegations in Counts I and IV that Plaintiff was the subject of a false arrest in violation of the Fourth Amendment. ECF No. 16 ¶¶ 24, 39. For a cognizable false arrest claim, Plaintiff must show he was the subject of a warrantless arrest that was not supported by probable cause. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181–82 (4th Cir. 1996). For the reason stated above, the officers executed a lawful investigative stop, not an arrest, and summary judgment is therefore granted to Defendants regarding the false arrest claims enumerated in Counts I and IV.

### 6. Failure to Implement Proper Policies, Customs, and Practices (Counts II, III)

Sheriff Evans, the State of Maryland, and Calvert County seek summary judgment on Counts II and III, which allege that those parties "adopted and implemented careless and reckless policies, customs or practices" that led to violations of Plaintiff's constitutional rights. ECF No. 16 ¶¶ 30, 35. Of the rights Plaintiff alleges were violated, given the Court's rulings above, only

the allegation involving the scope of the patdown remains, thus any claims related to the customs or practices of various municipal employers or supervisors as to any other alleged violations must be dismissed. *See Shields v. Prince George's Cty,* U.S. Dist. LEXIS 118924, at *12 (noting that a claim against a municipal employer based on custom or practice proceeds only if plaintiff establishes a violation of rights by one of the active employees). Plaintiff's custom and practice claim against the Sheriff, the State of Maryland and Calvert County related to the scope of the patdown also fails because the Plaintiff does not allege with specificity the nature of the custom or practice or inadequate training that caused the alleged violation. *Id.* at *22 ("section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.") (quoting *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)). Thus, summary judgment is granted in favor of Defendants on Counts II and III of the Amended Complaint.

### C.    42 U.S.C. § 1985(3)—Conspiracy Claim (Count VI)

Gott, Phelps, Cress, and Evans seek summary judgment on Count VI which alleges that those parties conspired to deprive Coleman of his rights in violation of 42 U.S.C. § 1985(3). ECF No. 16 ¶ 46. To establish a conspiracy claim under § 1985(3), Plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). A claimant must additionally show a "'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* at 1377. Plaintiff's Amended Complaint provides no factual basis for finding any Defendants to be

motivated by a "specific class-based invidiously discriminatory animus." Consequently, this

Court grants summary judgment to Gott, Phelps, Cress, and Evans on Count VI.

### D.      42 U.S.C. § 1986—Neglect to Prevent Conspiracy Claim (Count VII)

The Sheriff's Department seeks summary judgment on Count VII which alleges that it

neglected to prevent a § 1985 conspiracy in violation of 42 U.S.C. § 1986. ECF No. 16 ¶ 52. §

1986 states:

> Every person who, having knowledge that any of the wrongs conspired to be
> done, and mentioned in section 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be liable to
> the party injured, or his legal representatives, for all damages caused by such
> wrongful act, which such person by reasonable diligence could have prevented . .
> . .

42 U.S.C. § 1986 (2012). Because Plaintiff has pleaded no factual basis to meet the elements of a

§ 1985 conspiracy, this Court grants summary judgment to the Sheriff's Department on Count

VII.

### E.      18 U.S.C. § 241—Conspiracy Claim (Count VIII)

Gott, Phelps, Cress, and Evans seek summary judgment on Count VIII which alleges that

those parties conspired to deprive Coleman of his rights in violation of 18 U.S.C. § 241. ECF No.

16 ¶ 55. But 18 U.S.C. § 241 is a criminal statute and does not provide for civil enforcement.

Consequently, this Court grants summary judgment to Gott, Phelps, Cress, and Evans on Count

VIII.

### F.      State Intentional and Constitutional Tort Claims (Counts IX–XVII)

Defendants seek summary judgment on Counts IX through XVII, which allege that Coleman was a victim of various state law intentional and constitutional torts.[11] ECF No. 16 ¶¶ 56–96.

### 1.  Sovereign Immunity

The State of Maryland and the Calvert County Sheriff Department, along with Gott, Phelps, Cress, and Evans in their official capacities[12] seek summary judgment on all counts on the basis of Eleventh Amendment sovereign immunity. ECF No. 27 at 16–17. Under the Eleventh Amendment, an individual citizen cannot directly sue a state absent a waiver by the State or congressional abrogation. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *see* U.S. Const. amend. XI. This immunity extends to "state agencies and state officers acting in their official capacity." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 2011). The plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

### a.  The State of Maryland

Plaintiff's Amended Complaint does not discuss whether the General Assembly of Maryland has waived sovereign immunity for any of the aforementioned state law actions against the State in federal court. *See* ECF No. 16.[13] Plaintiff has therefore failed his burden of establishing a waiver of sovereign immunity for any of his state law actions against the State.

---

[11] Specifically: assault; battery; intentional infliction of emotional distress; false arrest; malicious prosecution; abuse of process; false imprisonment; gross negligence; and a violation of Article 24 of Maryland's Declaration of Rights. ECF No. 16 ¶¶ 56–96.

[12] This Court grants dismissal to Calvert County on all counts naming it as a Defendant in Plaintiff's Amended Complaint. To this date, the Court's online docket confirms that Calvert County was never served with a copy of the Summons.

[13] Further research by this Court indicates that Maryland has not consented to tort suits brought against it in federal court. *Davenport v. Maryland*, 38 F. Supp. 3d 679, 691 (D. Md. 2014) (citing *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990)).

Consequently, this Court grants summary judgment to Maryland on the basis of sovereign immunity with respect to Plaintiff's state claims.

### b. Calvert County Sheriff Department

In Maryland, county sheriff's offices are state agencies. *See, e.g.*, *Lee v. Queen Anne's Cnty. Office of the Sheriff*, No. RDB-13-672, 2014 WL 476233, at *6 (D. Md. Feb. 5, 2014). Consequently, this Court grants summary judgment to the Calvert County Sheriff Department on the basis of sovereign immunity with respect to Plaintiff's state law claims. *See Cromer*, 88 F.3d at 1332.

### c. Gott, Phelps, Cress, and Evans in their official capacities

In Maryland, "county sheriffs and their deputies are state officials when acting in their official law enforcement capacities." *Lee*, 2014 WL 476233, at *6. "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Because Maryland has sovereign immunity, Gott, Phelps, Cress, and Evans are afforded the same immunity as state officials acting in their official capacities. *See Cromer*, 88 F.3d at 1332. Consequently, this Court grants summary judgment to Gott, Phelps, Cress, and Evans in their official capacities with respect to Plaintiff's state law claims.[14]

### 2. Maryland Tort Claims Act Immunity

Gott, Phelps, Cress, and Evans in their individual capacities seek summary judgment on all state law intentional and constitutional torts on the basis of immunity through the Maryland Tort Claims Act ("MTCA"). ECF No. 27 at 38. State officials are "immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the

---

[14] The preceding analysis of sovereign immunity applies equally to all Defendants named in the federal § 1983 claims besides Gott, Phelps, Cress, and Evans in their individual capacities. Congress has not abrogated Eleventh Amendment immunity through § 1983. *Dyer v. Maryland State Bd. of Educ.*, No. JKB-15-3699, 2016 WL 2939740, at *6 (D. Md. May 20, 2016). Consequently, in addition to the reasons previously stated, summary judgment is granted to all Defendants besides Gott, Phelps, Cress, and Evans in their individual capacities with respect to the § 1983 claims.

public duties of the State personnel and is made without malice or gross negligence . . . ." *See* Md. Code Ann., State Gov't § 12-105 (West 2016) (citing Md. Code Ann., Courts and Judicial Proceedings § 5-522 (West 2016)).

Plaintiff's state law claims implicate Gott, Phelps, Cress, or Evans only for actions taken within the scope of their public duties. *See* ECF No. 16. The state law claims encompass actions taken by Defendants during the course of the traffic stop and the process of releasing Coleman's impounded truck. *Id.* The officers on the scene and Sheriff Evans were clearly acting within the scope of their public duties at these times.

Gott, Phelps, Cress, and Evans would not be afforded MTCA immunity if their tortious conduct was made with malice or gross negligence. *See* Md. Code Ann., State Gov't § 12-105. Malice "has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 296 (D. Md. 2005) (quoting *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 984 (Md. 1989)). Plaintiff has alleged no facts to establish that Gott, Phelps, Cress, or Evans acted "with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *See* ECF No. 16.

To establish gross negligence, a plaintiff must "allege a duty of care, a breach of that duty, and damages as a proximate cause of the breach." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 803 (D. Md. 2002). "[A] defendant is liable for gross negligence 'only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'" *Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 895 (D. Md. 2015) (quoting *Brooks v. Jenkins*, 104 A.3d 899,

908 (Md. Ct. Spec. App. 2014)). Plaintiff's Amended Complaint alleges no facts that establish the elements of gross negligence for any of Defendants' actions.

Consequently, this Court grants summary judgment to Gott, Phelps, Cress, and Evans in their individual capacities on the basis of MTCA immunity for state officials with respect to the state law claims.

## III.   CONCLUSION

For the reasons stated above, the Court grants summary judgment to Defendants on all counts except for the unreasonable search and seizure claim in Count I with respect to Gott, Phelps, and Evans in their individual capacities. A separate Order follows.

Dated: September 22, 2016

_____
GEORGE J. HAZEL
United States District Judge